UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


SYLVESTER MARTIN,

                        Petitioner,

v.                                      Case No. 3:07-cv-179-J-34JRK

WALTER A. MCNEIL,[1]
et al.,
                        Respondents.
_____


**ORDER**

**I. Status**

    Petitioner Sylvester Martin, who is proceeding pro se,
initiated this action by filing a Petition for Writ of Habeas
Corpus (Petition) (Doc. #1) pursuant to 28 U.S.C. § 2254 on March
12, 2007, pursuant to the mailbox rule.  Petitioner challenges a
2000 state court (Duval County, Florida) judgment of conviction for
sexual battery on the following ground: the trial court denied
Petitioner's right to a fair trial when the court allowed
collateral crimes evidence to become a feature of the trial, which
prejudiced the jury.

_____
    [1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Walter A. McNeil is substituted for James R. McDonough
as the proper party Respondent having custody over Petitioner.

Respondents filed a response to the Petition. <u>See</u> Respondents' Answer in Response to Order to Show Cause (Response) (Doc. #11).[2] On May 7, 2007, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #6), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Petitioner has now replied, <u>see</u> Petitioner's Reply to Respondents' Response (Reply) (Doc. #20), and this case is ripe for review.

## II. Procedural History

On May 15, 2000, the State charged Petitioner Sylvester Martin with sexual battery. Resp. Ex. A. Before trial, the State filed a notice that it intended to introduce evidence of other crimes, wrongs or acts which consisted of others acts of sexual abuse Martin committed upon the victim. Resp. Ex. B. Martin was tried before a jury, and the jury found him guilty of sexual battery upon a person less than twelve years of age, as charged. Resp. Ex. C, Transcript of the Jury Trial (Tr.) at 562. On July 17, 2000, the trial court sentenced Martin to a term of life imprisonment. Resp. Ex. D.

On appeal, Petitioner, through counsel, raised the following issue: Petitioner was denied a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution because the collateral crimes evidence became a feature of the trial and

---

[2] The Court will refer to Respondents' exhibits as "Resp. Ex."

2

unnecessarily inflamed and prejudiced the jury against him.  Resp. Ex. E.  The State filed an Answer Brief.  Resp. Ex. F.  On February 19, 2002, the appellate court affirmed _per curiam_, without issuing a written opinion.  _Martin v. State_, 810 So.2d 925 (Fla. 1st DCA 2002); Resp. Ex. G.  The mandate issued on March 7, 2002.  Resp. Ex. G.

On October 2, 2002, Petitioner filed a _pro se_ petition for writ of habeas corpus, alleging ineffective assistance of appellate counsel for failure to raise, on direct appeal, the grounds raised in his motion to suppress.  Resp. Ex. H.  On November 20, 2002, the appellate court denied the petition _per curiam_.  _Martin v. State_, 833 So.2d 124 (Fla. 1st DCA 2002); Resp. Ex. I.

On or about July 17, 2002, Petitioner filed a _pro se_ motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, asserting that his attorney was ineffective for failing to convey a plea offer.  Resp. Ex. J at 1-30.  The court held an evidentiary hearing, and on April 12, 2005, denied the Rule 3.850 motion.  _Id_. at 31-32, 33-78.  Petitioner appealed, and the State filed an answer brief.  Resp. Exs. K; L.  On April 12, 2006, the appellate court affirmed the denial _per curiam_, without issuing a written opinion.  _Martin v. State_, 929 So.2d 1058 (Fla. 1st DCA 2006); Resp. Ex. M.  On May 24, 2006, the court denied Petitioner's motion for rehearing.  Resp. Exs. N; O.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d); Response at 7.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted by this Court.

### V.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), the review "is 'greatly circumscribed and highly deferential to the state courts.'  Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir.

2002)." <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication[3] resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[4] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Marquard</u>, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. <u>See Carey v. Musladin</u>, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466 F.3d 1298, 1305 (11th Cir. 2006).

<u>Id</u>. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants

---

[3] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).

[4] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. at 473 (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)).

rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." Schriro, 550 U.S. at 473-74. This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## VI. Findings of Fact and Conclusions of Law

Petitioner Martin claims that the trial court denied Petitioner's right to a fair trial when the court allowed collateral crimes evidence to become a feature of the trial, which prejudiced the jury. Specifically, he alleges:

> The Petitioner was charged with a single count of sexual battery allegedly committed between October 16, 1997 and October 15, 1998. At trial, the alleged victim was the only witness to testify as to the charged offense. Over objections, the state was allowed to introduce evidence of four additional sexual batteries allegedly committed by Petitioner against the victim. The state also, in it's [sic] opening and closing arguement [sic] urged that the Petitioner had committed repeated sexual batteries against the victim. The emphasis given to the additional allegations of sexual battery, which were uncharged crimes, served to portray Petitioner's bad character and propensity to commit such offenses, and shifted the uncharged crimes to be the focal point of the Petitioner's trial, instead of the offense charged. Never-the-less, the prejudicial effect severely tainted the fairness of the Petitioner's trial and undermined the constitutionality or meaning of Due Process by unnecessarily inflaming the mind[s] of the jury that served at his trial.

6

Petition at 6.

Respondents contend that Petitioner has failed to raise a federal constitutional claim that is cognizable on federal habeas corpus review. This Court disagrees. Further, Respondents argue that, even assuming that Petitioner has raised a cognizable federal constitutional claim in this Court, Petitioner has not sufficiently exhausted the claim in state court. Again, this Court disagrees.

Petitioner, through counsel, sufficiently exhausted this federal constitutional claim in state court by raising the following issue on direct appeal: Petitioner was denied a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution because the collateral crimes evidence became a feature of the trial and unnecessarily inflamed and prejudiced the jury against him. See Resp. Ex. E, Amended Initial Brief of Appellant. Indeed, on direct appeal, Petitioner complained that the State, over objections, was allowed to introduce evidence of four additional sexual batteries allegedly committed by Petitioner against the victim. Id. at 12-13.

In response to Petitioner's contention in the state court appellate proceeding, the State argued that the issue had not been preserved for review because (1) defense counsel only made a general objection in that he failed to identify the witnesses who testified about the other crimes and what they said; (2) defense counsel failed to identify when the other crimes became a feature

of the trial; and (3) defense counsel did not ask for specific relief. Resp. Ex. F, Answer Brief at 7-9. Because the First District Court of Appeal affirmed Petitioner's conviction without a written opinion, Respondents now contend that the state appellate court did not review the merits of this claim and thus Petitioner is now procedurally barred from raising this claim. Response at 13. Respondents' procedural default argument fails since the First District Court of Appeal affirmed his conviction without stating the basis for its affirmance.

Alternatively, in its state appellate brief, the State addressed the merits of the claim, contending that the collateral crimes evidence did not become a feature of the trial. Resp. Ex. F at 9-12. Thus, the appellate court may have affirmed Petitioner's conviction based on the State's merits argument. Assuming that the appellate court addressed the merits, Petitioner is not entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[5] Thus, there is a qualifying state court decision. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness

_____

[5] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright, 278 F.3d at 1255.

per <u>se</u>, of the state court decision that we are to decide." <u>Brown</u>
<u>v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 537
U.S. 978 (2002).

Upon a thorough review of the record and the applicable law,
the Court concludes that the state court's adjudication of this
claim was not contrary to clearly established federal law, did not
involve an unreasonable application of clearly established federal
law, and was not based on an unreasonable determination of the
facts in light of the evidence presented in the state court
proceedings. Thus, Petitioner is not entitled to relief on the
basis of this claim.

Finally, even assuming that the state appellate court's
adjudication of this claim is not entitled to deference under
AEDPA, Petitioner's claim is without merit. After an in-depth
review of the trial transcript, this Court concludes that the trial
court's admission of the collateral crimes evidence did not deny a
fair trial to Petitioner. The collateral crimes evidence was not
a feature of the trial and did not prejudice the jury. Petitioner
received a fair trial.

As its first witness, the State called the child victim, who
testified that, when she was five years old, Petitioner stuck his
"pee-pee" inside her "coo-coo" while they were in the back room of
Ms. Lillian's house. Tr. at 166-70, 230. Prior to the State's

introduction of testimony concerning other similar crimes, the trial judge gave the following instruction:

> The evidence you are about to receive concerning evidence of other crimes allegedly committed by the defendant will be considered by you for the limited purpose of proving opportunity, intent, preparation, plan on the part of the defendant. You should consider it only as it relates to those issues.
>
> Remember, the defendant is not on trial for a crime that is not included in the information.

Id. at 170.

The prosecutor then asked the child victim about the second incident. Id. The child victim testified that, when she was five years old, Petitioner again told her to take her clothes off and he pulled down his clothes. Id. at 171-72. As with the first incident, she states that this incident occurred in the back room of Ms. Lillian's house. Id. at 171. Again, similarly to the first incident, she stated that Petitioner told her to go to the bathroom and get a rag and put some cold water on it and wipe. Id. at 172. The child victim testified that the same pattern was followed in the other three incidents with Petitioner when she was six years old. Id. at 172-77.

At the conclusion of the child victim's testimony concerning the similar crimes, the trial judge instructed the jury as follows:

> At this time let me finish up the instruction. Ladies and gentlemen of the jury, the evidence which has just been admitted since the Court gave its instruction the first time, the

> evidence which has just been admitted to show
> crimes -- to show similar crimes, wrongs or
> acts allegedly committed by the defendant will
> be considered by you only as that evidence
> relates to proof of opportunity, intent,
> preparation, plan on the part of the
> defendant.
>
> Remember that the defendant is not on
> trial for a crime that is not included in the
> information.

Id. at 177.

The child victim also testified that Petitioner asked her to kiss his "pee-pee." Id. at 179. The trial judge again instructed the jury on collateral crimes evidence. Id. at 179-80. And, after the recess, the trial judge re-read the entire similar crimes evidence instruction to the jury to avoid any confusion. Id. at 185. The jury also viewed a videotape, in which the victim's statements concerning other incidents were minimal and somewhat confusing. Id. at 287-98. After the videotape was played for the jury, the trial judge again instructed the jury on the similar crimes evidence. Id. at 298.

Ms. Cecilia Carter[6] testified that the child victim told her that "Sylvester had touched her on her poo-poo" with his "wee-wee." Id. at 234, 236-37. Ms. Carter relayed this information to the child victim's mother, and they drove to Ms. Lillian's house to confront the Petitioner. Id. at 234-35, 238.

---

[6] Throughout the transcript and the appellate briefs, her surname has been referred to as "Carter" as well as "Cater." This Court will refer to her surname as "Carter."

Ms. Femita Johnson (the child victim's mother) testified that she took her daughter to Ms. Lillian's house while she worked. _Id_. at 241-42. In May of 1999, she received a call from the doctor that her daughter had gonorrhea and chlamydia. _Id_. at 244. Although she confronted her daughter, her daughter did not tell her what had happened. _Id_. at 244-45. Ms. Johnson testified that after her daughter had spoken to Ms. Carter, her daughter then told her that Little Sylvester had put his pee-pee in her coo-coo. _Id_. at 246, 259. When Ms. Johnson learned this, they went to Ms. Lillian's house to confront Petitioner and upon arriving at the house, her daughter "jumped out of the car" and started hitting and kicking Petitioner. _Id_. at 247. Before her daughter disclosed the incident to Ms. Carter, her daughter had repeatedly told her that nothing had happened. _Id_. at 255-56.

On direct examination, Ms. Johnson only testified about a single incident, not other instances of similar conduct. However, on cross-examination, she testified that her daughter told her about other instances. _Id_. at 261-63. After the testimony of both Mr. Carter and Ms. Johnson, the trial judge again instructed the jury on similar crimes evidence. _Id_. at 283.

Dr. Megan Brown, an expert in the field of child sexual abuse examinations, testified that she examined the child victim on June 21, 1999. _Id_. at 305. The trial judge again instructed the jury on similar crimes evidence. _Id_. at 307. Dr. Brown testified that,

at the time of the examination, the child victim reported to the doctor that she had been penetrated only one time by Petitioner when she was five years old. Id. at 308, 313. She also reported that he put his hand on her "private" when she was five years old. Id.

Detective Mitchell, who interviewed Petitioner on June 10, 1999, testified that Petitioner did not appear to be under the influence. Id. at 323, 326. Over objection, Detective Mitchell testified that Petitioner confessed that he had engaged in penile/vaginal intercourse with the child victim. Id. at 333. Over objection, Petitioner's written statement was read to the jury. Id. at 338.

At the close of the State's case, Petitioner moved for a judgment of acquittal, which was denied. Id. at 357-59. The State was allowed to reopen its case to amend the Information by changing the dates of the offense to read "October 16, 1997, to October 15, 1998" to comport with the evidence since the amended time frame reflects when the child victim was five years old.[7] Id. at 376-81, 388; Resp. Ex. A, Fourth Amended Information. After the State rested its case in front of the jury, Tr. at 388, defense counsel then renewed the motion for judgment of acquittal, stating:

_____

[7] The child victim's birth date is October 16, 1992. Tr. at 241, 380. The witnesses testified that the charged offense occurred when the child victim was five years old.

13

And additionally, Judge, at this point I
believe, especially with the amended
information and especially with the number of
acts that the Williams Rule and the hearsay
regarding the Williams Rule that has come in
is excessive in this case and would state that
it has become a feature of the trial now that
the State has closed their case.

Id. at 389. The trial judge denied the motion. Id. at 389-90.

The defense called Harold Harrison, who identified defense exhibit one as a diagram of Ms. Lillian's house and testified that there were only three doors within the house, that the bedroom doorways did not have doors and that there is no porch to the house. Id. at 392-96.

Angela Ford, who had lived with Ms. Lillian for over three years, testified that Ms. Lillian had started babysitting the child victim only a few months before Petitioner's arrest. Id. at 402-04. Ms. Lillian testified by deposition that she had babysat the child victim for about eight or nine months. Id. at 408-10. She confirmed that she had never left the child victim alone with Martin. Id. at 410. Mary Cutter testified that prior to Martin's arrest, she had seen him at the door with a beer can in his hand, which he was drinking. Id. at 422-24. Sabrina Smith testified that on the morning of his arrest, Martin had consumed six beers, cocaine and marijuana. Id. at 426-27.

In testifying on his own behalf, Sylvester Martin denied any sexual contact with the child victim. Id. at 437. He stated that, on the morning of his arrest, he had consumed three or four beers

and had smoked a cigar with cocaine and marijuana in it. Id. at
438. He noted that he had repeatedly denied the incident to the
detective. Id. at 440-41. Martin testified that the detective
told him that if he wrote a statement that he would probably
receive counseling. Id. at 442. Martin stated that he eventually
agreed to admit the offense although it was not true. Id. at 443.
He also had denied the incident to several other people, including
his mother. Id. at 444.

After the defense rested its case and counsel made closing
arguments to the jury, the trial judge instructed the jury again:

> The evidence which has been admitted to
> show similar crimes, wrongs or acts allegedly
> committed by the defendant will be considered
> by you only as that evidence relates to the
> proof of opportunity, intent, preparation,
> plan on the part of the defendant.
>
> However, the defendant is not on trial
> for a crime that is not included in the
> information.

Id. at 544.

Petitioner, in the Petition before this Court, contends that
the similar crimes evidence became a feature of the trial and
inflamed the jury. Petition at 6; Reply at 2. "[A] trial court
may not allow relevant collateral crimes to become a feature of the
trial, which occurs when inquiry into the collateral crimes
'transcend[s] the bounds of relevancy to the charge being tried'
and the prosecution 'devolves from development of facts pertinent
to the main issue of guilt or innocence into an assault on the

15

character of the defendant.'" <u>Conde v. State</u>, 860 So.2d 930, 945 (Fla. 2003) (quoting <u>Williams v. State</u>, 117 So.2d 473, 475 (Fla. 1960)).

Here, the collateral crimes evidence was not a focal point of the jury trial and did not involve acts more serious than the capital sexual battery for which Petitioner Martin stood trial. <u>See</u> <u>McLean v. State</u>, 934 So.2d 1248, 1263 (Fla. 2006) (explaining the trial court's critical gatekeeping function in assessing collateral crimes evidence where the probative value must be balanced with the unfairly prejudicial effect of the evidence; collateral crimes testimony cannot become "a feature of the trial"); <u>Seavey v. State</u>, 8 So.3d 1175 (Fla. 2d DCA 2009) (reversing a lewd and lascivious molestation conviction for a new trial where collateral crimes evidence became an improper feature of the trial); <u>Jones v. State</u>, 944 So.2d 533, 535-36 (Fla. 5th DCA 2006) (stating that the need to prevent collateral crimes evidence from becoming the focal point of a trial is particularly great where the alleged collateral crimes evidence relates to more serious criminal offenses than those for which a defendant is on trial).

The record clearly reflects that Petitioner Martin had a fair trial. There was minimal testimony of other crimes, and such evidence did not overwhelm the evidence of the charged crime of sexual battery. In the opening argument, <u>see</u> Tr. at 145-48, and

16

closing argument, id. at 473-500, the prosecutor did not refer in detail to the collateral crimes evidence. Specifically, the prosecutor pointed out to the jury that Petitioner was charged with one count of sexual battery upon a person less than twelve years of age and that the State had to prove the two elements of that crime (that the victim was less than twelve years of age when she was molested and that Petitioner committed an act upon the victim in which Petitioner's penis penetrated or had union with the vagina of the victim). Id. at 475-76, 484, 486-87, 497-98. Further, the prosecutor explained to the jury that "the first act is the act upon which he is charged, which is when she was five years of age." Id. at 476. However, she also reminded the jury: "But you heard evidence of other acts. And the Judge read you an instruction that those other acts were only going to show the defendant's plan, opportunity, intent or preparation." Id.

Further, the trial judge ensured that the collateral crimes evidence did not become a feature of the trial and reminded the jury on numerous occasions that the collateral crimes evidence should only be considered for the limited purpose of proving opportunity, intent, preparation, or plan on the part of the defendant and that "the defendant is not on trial for a crime that is not included in the information." Id. at 544. Petitioner's claim that he was denied a fair trial is without merit, and he is not entitled to federal habeas corpus relief.

Any claims not specifically addressed are found to be without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of September, 2009.

**MARCIA MORALES HOWARD**
United States District Judge

sc 9/8
c:
Sylvester Martin
Ass't Attorney General (Pate)